# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY ADAMS,<br><br>        Plaintiff,<br><br>    v.<br><br>HCF MANAGEMENT and PAUL LIEBER,<br><br>        Defendants. | Civil Action No. 18-47<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Kimberly Adams ("Plaintiff") initiated this civil action against her former employer, HCF Management ("HCF"), and her former supervisor, Paul Lieber ("Lieber", and collectively with HCF, "Defendants") alleging that she was wrongfully disciplined and terminated. Plaintiff contends that her discharge violated the Pennsylvania Whistleblower Law, 43 Pa. Stat. Ann. § 1421 et seq., and the public policy of the Commonwealth of Pennsylvania.

Presently pending before the Court is Defendants' Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 7). For the reasons set forth below, Defendants' Motion to Dismiss [7] will be granted in part and denied in part.

### II. Background

Prior to her discharge, Plaintiff served as a Nursing Home Administrator at Bradford Manor, a long-term care facility supervised by HCF and located in Bradford, Pennsylvania. (Docket No. 1 at ¶¶ 5-6). Pennsylvania regulations specify that each resident at a facility such as Bradford Manor must receive a minimum number of general nursing care hours from staff each

day. (*Id*. at ¶ 9). Plaintiff contends that management, including Lieber, continually pressured her to increase the number of patients cared for at the facility despite a lack of sufficient staff to meet the Pennsylvania regulatory requirements. (*Id*. at ¶¶ 8-9).

In August of 2017, Plaintiff expressed specific concerns to management concerning the staffing levels at Bradford Manor and her fear that the facility was under-staffed and should not take any additional patient referrals. (*Id.* at ¶ 11). On August 28, 2017, Plaintiff informed Lieber in writing that she believed Bradford Manor had failed to meet the staffing requirements for the previous weekend. (*Id*.). In response, Lieber presented her with a disciplinary write-up and a Performance Improvement Plan that required Plaintiff to maintain an unrealistic average number of residents for the subsequent thirty days. (*Id*.). Plaintiff believes that the actual impetus for her discipline was her decision to put her concerns about staffing in writing. (*Id*. at ¶¶ 10-11).

On September 6, 2017, Lieber informed Plaintiff that she had failed to meet her performance goals and that she could either resign or be terminated. (*Id*. at ¶ 12). Lieber ultimately terminated her employment on September 20, 2017. (*Id*. at ¶ 15).

### III.  Procedural History

Plaintiff initiated the instant action on February 14, 2018. (Docket No. 1). Defendants responded by filing the instant Motion to Dismiss on April 16, 2018. (Docket No. 7). Following a brief in response filed by Plaintiff on May 17, 2018, and a reply brief filed by Defendants on May 31, 2018, Defendants' motion is now ripe for review.

### IV.  Legal Standards

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 556 U.S. at 684. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id*. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). The determination as to whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 556). In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## V. Discussion

### A. Pennsylvania Whistleblower Law (Count I)

In Count I of her Complaint, Plaintiff asserts that HCF violated the Pennsylvania Whistleblower Law by terminating her employment in retaliation for her written report that Bradford Manor had failed to meet state-mandated nursing staff levels for several days in August 2017. Defendants respond that Plaintiff cannot prevail because HCF is not a "public body" within the meaning of the statute and because Plaintiff's allegations concern an act of "wrongdoing" rather than "waste."

In pertinent part, the Pennsylvania Whistleblower Law provides that:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee or a person acting on behalf of the employee makes a good faith report or is about to report . . . *an instance of wrongdoing or waste by a public body or an instance of waste by any other employer* as defined in this act.

43 Pa. Stat. Ann. § 1423 (2014) (the "Whistleblower Law") (emphasis added). The Whistleblower Law defines a "public body" as, *inter alia*, a body "which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority . . . ." *Id*. at § 1422. It defines an "employer" as an individual, partnership, association, or corporation (whether for profit or non-profit) "which receives money from a public body to perform work or provide services relative to the performance of work for the provision of services to a public body." *Id*. "Wrongdoing" is defined as "[a] violation which is not merely technical or minimal in nature of a Federal or State statute or regulation . . . ." *Id.* "Waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." *Id*.

Applying these definitions to our analysis, two fundamental questions emerge: (1) Does the misconduct alleged by Plaintiff represent wrongdoing, or does it represent waste?; and (2) If it represents wrongdoing, is HCF a public body, or merely an employer?

The first of these questions is easily answered. The only misconduct described in the Complaint is Plaintiff's allegation that Bradford Manor violated state regulations governing appropriate staff levels during the final weekend of August 2017. This type of regulatory violation falls squarely within the statutory definition of wrongdoing, to wit: "[a] violation . . . of a Federal or State statute or regulation . . . ." 43 Pa. Stat. Ann. § 1422.

Plaintiff attempts to salvage her claim by suggesting that, because statutory and regulatory compliance is a condition of Medicaid payment, payments for services rendered during a period of non-compliance automatically represent "waste." Plaintiff has cited no support for this proposition, and a review of other cases containing similar allegations indicates that such allegations should be treated as wrongdoing. For example, in *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403 (M.D. Pa. 2016), the district court characterized allegations that a private home care provider had accepted Medicaid and Medicare reimbursements during a period of time in which the facility had failed to satisfy minimum nurse training requirements as "an instance of 'wrongdoing,' rather than an instance of waste." *Id.* at 407.[1]

In short, Plaintiff's allegations fit squarely within the statutory definition of "wrongdoing." Because the Whistleblower Law only protects reports of wrongdoing that

---

[1] Even if the misconduct described by Plaintiff could somehow be construed as waste, a party must still allege that the waste was "substantial" in order to prevail on a Whistleblower Law claim. 43 Pa. Stat. Ann. § 1422 (defining waste as "[a]n employer's conduct or omissions which result in *substantial* abuse" of Commonwealth funds) (emphasis added). Courts have held that a single occurrence of misconduct involving a small amount of funds is generally insufficient to satisfy this standard. *See Bennett v. Republic Services, Inc.*, 179 F. Supp. 3d 451, 455 (E.D. Pa. 2016) (holding that "[o]ne occurrence" of minor misconduct does not constitute "substantial abuse.").

concern public bodies, Plaintiff cannot prevail on her Whistleblower Law claim unless she can demonstrate that HCF is a public body within the meaning of the statute. *See Eaves-Voyles*, 198 F. Supp. 3d at 407 ("Because Plaintiff's amended complaint alleges that Defendant committed an instance of "wrongdoing," rather than an instance of waste, Defendant must qualify as a "public body" in order for Plaintiff's Pennsylvania Whistleblower Law claim to survive.").

Our analysis of this issue begins with the Pennsylvania legislature's recent amendment to the Whistleblower Law. Prior to 2014, the Whistleblower Law extended protection *only* to employees who worked for a "public body." *See Gratz v. Ruggiero*, 2017 WL 2215267, at * 7 (E.D. Pa. May 19, 2017). A "public body" was defined as a governmental or other body "created by . . . or . . . funded by . . . Commonwealth or political subdivision authority . . . ." *Id*. (quoting 43 Pa. Stat. Ann. § 1422 (1986)). Under that version of the statute, Pennsylvania courts disagreed as to whether the act of accepting Medicaid reimbursements was sufficient to transform an otherwise private entity into a public body for purposes of Whistleblower Law liability. *Compare Cohen v. Salick Health Care, Inc*., 772 F. Supp. 1521, 1527 (E.D. Pa. 1991) ("[T]he legislature did not intend that the mere receipt of moneys from a state source[, such as Medicaid,] for services rendered should bring the recipient within the Whistleblower Law"), *with Denton v. Silver Stream Nursing and Rehab. Ctr.*, 739 A.2d 571 (Pa. Super. Ct. 1999) (holding that a nursing facility that received Medicaid reimbursements qualified as a "public body").

The 2014 amendment to the statute appears to have resolved this issue. Under the current version of the statute, the Whistleblower Law's application has been expanded to include private "employers," defined as individuals, partnerships, associations, or corporations (whether for profit or non-profit) "which receive[] money from a public body to perform work or provide services relative to the performance of work for the provision of services to a public body." 43

Pa. Stat. Ann. § 1422. The "very purpose of the amendment" was to extend Whistleblower liability to employees of private companies "that are performing services for public bodies with public monies." *See Gratz*, 2017 WL 2215267, at *7 (quoting Brian L. Ellis, Pa. H.R. Co-Sponsorship Memoranda, H. Bill 105 (Jan. 11, 2013)). HCF – a private corporation that receives "money" through the Medicaid program for "services" provided – appears to fall squarely within the current statute's definition of an "employer" rather than a "public body." *See Gratz*, 2017 WL 2215267, at *7 (applying the current statute's definition of employer to a non-profit corporation that provides mental health services to children in exchange for reimbursements from Medicaid funds); *Eaves-Voyles*, 198 F. Supp. 3d at 407 (holding that a home care nursing and rehabilitation corporation that received Medicaid funds did not qualify as a public body under the current version of the statute).

Plaintiff's arguments to the contrary rely almost entirely on the Pennsylvania Superior Court's holding in *Denton*. In *Denton*, the court opined that the previous version of the Whistleblower Law "[was] intended to be applied to bodies that receive not only money appropriated *by* the Commonwealth, but also public money that passes *through* the Commonwealth." 739 A.2d at 576 (emphasis in original). The court concluded that a nursing facility that received funds administered by the Commonwealth, such as Medicaid reimbursements, qualified as a public body under the Whistleblower Law. *Id*.

Plaintiff's reliance on *Denton* is misplaced for at least two reasons. First, as discussed above, the Pennsylvania legislature's 2014 amendment to the Whistleblower Law explicitly defines private entities that receive public funds as "employers," a designation that did not exist at the time that the *Denton* opinion was issued. This amendment appears to vitiate the applicability of pre-amendment decisions such as *Denton*. *See Gratz*, 2017 WL 2215267, at *8

(rejecting a party's arguments with regards to Whistleblower Law liability because they "[did] not take into account the 2014 amendments to the Law and relie[d] on cases that interpreted the prior version of the law.").

Secondly, even prior to amendment, *Denton* appears to have been rejected by the majority of courts that considered it. In *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734 (E.D. Pa. 2011), for example, the court explained that *Denton* relied on an unsupportable interpretation of the holding of a prior case, *Riggio v. Burns*, 711 A.2d 497 (Pa. Super. Ct. 1998). In *Riggio*, the Pennsylvania Superior Court held that the Medical College of Pennsylvania was a public body within the meaning of the Whistleblower Act because the state legislature annually appropriated money in the state budget for its funding. *Riggio*, 711 A.2d at 499. The *Riggio* court expressly avoided the "much more complicated question" as to "whether Medicaid reimbursements constitute funding." *Id*. As noted in *Tanay*, "*Riggio* is of little assistance in determining the meaning of the word 'funded'" in the context of Medicaid reimbursements, rendering *Denton's* reliance on *Riggio* misplaced. *See Tanay*, 810 F. Supp. 2d at 744 ("We are not persuaded by the analysis in *Denton*. The court there relied on *Riggio*, a case which was factually distinguishable.").

Similarly, in *Zorek v. CVS Caremark Corp*., 2014 WL 12487695 (M.D. Pa. Apr. 16, 2014), the plaintiff alleged that he had been terminated after complaining to management that reductions in staff at a CVS pharmacy had resulted in an increase in errors in dispensing prescriptions. Relying on *Denton*, the plaintiff argued that the pharmacy was a public body within the meaning of the Whistleblower Law because it received reimbursements from Medicaid. *Id*. at *6. The court rejected *Denton*, explaining that, "[a]lthough there is no question that many doctors and other health care providers receive 'funds' for services rendered to

Medicaid eligible patients, it was clearly not the intention of the Pennsylvania legislature to include them as funded public bodies" under the Whistleblower Law. *Id*. at *7 (quoting *Tanay*, 810 F. Supp. 2d at 722); *see also Eaves-Voyles*, 198 F. Supp. 3d at 409 (rejecting *Denton* and concluding that the receipt of Medicaid funds was insufficient to "transform a private employer into a 'public body' subject to the Pennsylvania Whistleblower Law").

In reaching their conclusions, *Tanay*, *Zorek* and *Eaves-Voyles* – as well as many other published decisions – rely heavily on the opinion issued by a Pennsylvania district court in *Cohen v. Salick Health Care, Inc*., 772 F. Supp. 1521 (E.D. Pa. 1991). In *Cohen*, the district court predicted that the Pennsylvania Supreme Court would hold that the mere receipt of Medicaid reimbursements was insufficient to bring a private, for-profit corporation under the Whistleblower Law's definition of "public body." *Id*. at 1526-27. The court explained:

> In the Whistleblower Law, the use of the words "funded by or through" suggest a specifically appropriated amount of State funds to a public body. The language "funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body" was intended by the legislature to be limited to monies which were appropriated by the legislature for the purpose of aiding "public bodies" in pursuit of their public goals. This language was obviously not intended to make an individual or corporation a "public body" solely on the basis that monies were received by it from the state as reimbursement for services rendered.

*Id*.

The Court reaches the same conclusion here. The analysis set forth in *Cohen* and its progeny is persuasive, particularly when viewed in light of the Pennsylvania legislature's decision to extend Whistleblower Law liability to private employers in a manner that explicitly circumvents the need to characterize those entities as public bodies. We hold, therefore, that HCF is an employer, rather than a public body, and can only be liable under the Whistleblower Law for allegations of waste. Because Plaintiff's allegations concern wrongdoing, rather than

waste, Plaintiff's Whistleblower Law claim must fail. Defendants' Motion to Dismiss Count I of the Complaint will be granted.

### B. Wrongful Discharge (Count II)

In her second claim for relief, Plaintiff contends that her discharge violated a clear mandate of public policy. Although Pennsylvania generally recognizes the at-will employment doctrine, allowing employers to terminate employees "at-will" unless restrained by contract, courts have recognized limited exceptions in cases where an individual's discharge implicates a clear public policy of the Commonwealth of Pennsylvania. *Eaves-Voyles*, 198 F. Supp. 3d at 410 (citing *Weaver v. Harpster*, 975 A.2d 555, 563 (2009)). The public policy must be "expressly recognized in legislation, administrative regulations or decisions, or judicial decisions." *Id.* (citing *Murray v. Gencorp, Inc.*, 979 F. Supp. 1045, 1047-48 (E.D. Pa. 1997)). To prevail, a plaintiff "must do more than show a possible violation . . . that implicates only [his] own personal interest." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (2000). Rather, she must show "that some public policy of this Commonwealth is implicated, undermined, or violated because of the employer's termination." *Id.* The Third Circuit has held that the exception is limited to situations in which "an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; [or] (3) discharges an employee when specifically prohibited from doing so by statute." *Brennan v. Cephalon, Inc.*, 298 F. App'x 147, 150 (3d Cir. 2008) (citing *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)).

Drawing all inferences in Plaintiff's favor, her Complaint plausibly suggests that Lieber ordered her to bring additional patients into the facility during a time in which Bradford Manor

was already in violation of state regulations concerning minimum nursing staffing requirements because of an ongoing nursing staff shortage.[2] Lieber's directive came immediately after Plaintiff informed him that Bradford Manor had already failed to comply with state minimum staffing regulations on the previous weekend due to the nursing shortage. When Plaintiff cautioned Lieber in writing that additional referrals without a staff increase would cause the facility to sustain additional violations, Lieber issued her a Performance Improvement Plan that required her to increase referrals to an even greater level or face termination. Plaintiff further alleges that management had consistently pushed her to accept as many new patients as possible throughout her tenure despite her frequently expressed concerns over whether those additional patients would cause the facility to violate staffing regulations.

A Pennsylvania district court recently denied a motion to dismiss on the basis of allegations similar to those presented here. In *Eaves-Voyles*, the defendant, a home care facility, discharged the plaintiff because she refused the facility's request to schedule registered nurses to perform procedures that they had not been trained to do. 198 F. Supp. 3d at 410. The plaintiff had complained to management that scheduling the requested procedures would cause the facility to violate regulations prohibiting nurses from performing procedures without "instruction and supervised practice." *Id*. at 410-11 (citing 49 Pa. Code § 21.12). When she refused to schedule untrained nurses to perform the requested procedures, plaintiff was terminated. *Id*. at 410. The court held that this conduct implicated a clear mandate of public policy:

> Plaintiff alleges that Defendant terminated her after she refused Defendant's requests to schedule untrained registered nurses to perform [a venipuncture procedure] in violation of 49 Pa. Code §21.12, which prohibits registered nurses from performing venipuncture without

---

[2] The applicable regulation, promulgated under the Healthcare Facilities Act, 35 Pa. Stat. Ann. § 448.803, requires that a facility such as Bradford Manor provide a minimum number of general nursing care hours – specifically, 2.7 hours of direct care for each resident – during each 24-hour period. 28 Pa. Code § 211.12.

11

> 'instruction and supervised practice.' . . . . [Moreover,] had Plaintiff scheduled untrained nurses to perform venipunctures, she would have knowingly aided another person in violation of the nursing regulations, thereby violating 49 Pa. Code §21.18. Because Plaintiff alleges that she was terminated from her employment in [retaliation] for her "refusal to engage in conduct prohibited by law," *Herskowitz*, 2013 WL 5719250 at *8, the court finds that Plaintiff has met her burden in showing that her termination implicated a clear mandate of Pennsylvania public policy.

*Id.* at 410-11 (quoting *Herskowitz, v. City of Lebanon*, 2013 WL 5719250, at *8 (M.D. Pa. Oct. 21, 2013)).

As in *Eaves-Voyles*, Plaintiff has plausibly alleged that she was given an order that would have required her to violate state regulations and was then threatened with termination – and, ultimately, terminated – when she failed to comply. At this early stage in the proceedings, the facts alleged in support of this contention are sufficient to support a wrongful discharge claim under the public policy exception. Defendants' Motion to Dismiss Count II of the Complaint will be denied.

## VI. Conclusion

For all of the foregoing reasons, Defendants' Motion to Dismiss [Docket No. 7] will be GRANTED, in part and DENIED, in part. Defendants' Motion is granted as to Plaintiff's Pennsylvania Whistleblower Law claim (Count I) and denied as to her wrongful discharge claim (Count II). An appropriate order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF: All parties of record.
Date: July 12, 2018